### DUDKIEWICZ *v.* MIGOCKI.

1. DEEDS—CANCELLATION OF INSTRUMENTS—FRAUD—EVIDENCE.

In aged Polish woman's suit to set aside deed of her home to her youngest daughter and her husband, in which deed a life estate was reserved in grantor, proofs failed to sustain her allegations of fraud on part of grantees in that they were alleged to have deceived her into thinking she was signing only her last will, knowing that she was unable to read and write, where it appears that defendants had nothing to do with the entire transaction, and that her attorney correctly interpreted her wishes.

2. SAME—FRAUD—EVIDENCE—EQUITY.

Bill to cancel, on ground of fraud, aged grantor's deed to one of her daughters and latter's husband, in which a life estate was reserved in grantor, is ordered dismissed, without costs, where fraud is not shown, the grantees have paid the taxes, upkeep and repairs, have cared for plaintiff, and contributed toward her support.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted June 22, 1949. (Docket No. 71, Calendar No. 44,397.) Decided September 8, 1949.

Bill by Anna Dudkiewicz against Stanley Migocki and his wife, Florence Migocki, to cancel deed. Decree for plaintiff. Defendants appeal. Reversed and remanded for entry of decree for defendants.

*Earl T. Glocheski* (*Robert B. Burns,* of counsel), for plaintiff.

*Harry L. Merdzinski,* for defendants.

BOYLES, J. Plaintiff filed this bill of complaint in the superior court of Grand Rapids in chancery to cancel a deed. After issue was joined and the hearing of testimony, the trial court entered a decree granting plaintiff the relief prayed for and defendants appeal. We review the case *de novo*.

Plaintiff is a Polish woman who cannot read or write English. At the time of the hearing she was 77 years of age and in poor health. The defendants are her daughter Florence and the daughter's husband. They have lived with the plaintiff in her home in Grand Rapids ever since their marriage in 1936. For some time the defendants paid rent to the plaintiff, but recently, by agreement, no rent is required until defendants recoup the cost of a new roof that Stanley Migocki put on plaintiff's house.

Plaintiff was the only witness sworn in her behalf. Part of her testimony is not disputed. In June, 1945, an experienced Polish attorney who had 25 years' practice was called to her home (by her son-in-law), "because I was sick and couldn't walk." She claims that she only told the attorney she wanted him to make her will. The attorney prepared a will, and at the same time prepared the deed here involved. Plaintiff signed the deed and the will on the same day and in the presence of the same witnesses. The execution of the deed was acknowledged before her attorney as a notary public. About a week later the deed was put on record. It would appear from the record that the persons who participated in these events are of the same nationality. This becomes of importance in view of the fact that

much of their talk occurred in the Polish language with which the plaintiff was familiar.

The plaintiff testified that she did not ask the attorney to prepare a deed, and that she did not know she had signed a deed until 2 years later when she saw a "tax paper" with just the name of her son-in-law on it. Thereupon she asked them about it, and told them that she wanted her "paper" which was in a safety deposit box in the joint names of the plaintiff and her daughter Florence. Shortly afterward she started the instant case to set aside the deed.

As to her recollection of what occurred at the time the papers were prepared, the plaintiff testified as follows:

"I wanted Mr. Zamierowski to make some disposition of my property. I told him I wanted him to make a will for me, and how many children I had. He didn't ask me about what kind of property I had. I told him I wanted to sign a will so each child would share my property, and Florence get the house. I told Mr. Zamierowski about the children as follows: Oldest is Stella. $200 for her. Then Joey, also $200. Next Sophie, I told him $125. Then Celia, $300. Then Lottie, $200. Last Florence, nothing, because she going to have the house. I wanted Florence to have the house because she is the youngest. I stay down there and she stay with me because we get along good. That is what I told Mr. Zamierowski I wanted in my will. I didn't ask Mr. Zamierowski at that time for advice as to how he should do that. Mr. Zamierowski didn't say anything—just when to sign it."

On further examination, plaintiff testified:

"I said 'I want to make a will.' And he say 'How are you going to make it?' I said 'first the oldest,' then he commence, he write it; then he ask me 'who next,' I told him my son John, and then I say Sophie,

and each time and then Celia, you know, and then I say to him 'this Florence, I give the house,' that is what I am say, and then he start, he set down, he said 'I going to read' and he read me first English, then Polish, is anything like I tell you, and then you say 'that is all' and I said 'yes.' "

The record is plain that the plaintiff herself, and no one else, instructed her attorney as to what she wanted him to do. The defendants knew nothing about it at the time. The record is plain that she told her attorney she wanted her daughter Florence to have the home. There may be some doubt whether the plaintiff intended this to be accomplished by a deed reserving a life estate, or by a devise in her will, or both. The record is plain, however, that her attorney adopted both methods. The will, after providing for the specific legacies according to plaintiff's instructions, gives Florence the residue which, under the circumstances, would include the home in question. The deed conveys the home to the defendants, reserving a life estate to the plaintiff grantor. We are convinced from a full reading of plaintiff's testimony that her recollection as to many essential details was confused. This might be explained by the reason why her testimony was taken in advance of the trial. In his opinion, the court said:

"Plaintiff is 77 years old and in poor health. The bill was filed August 1, 1947, and on November 10, 1947, her condition was such that she was brought into court and her testimony taken that the record might be perpetuated. November 12th the answer was filed, and thereafter the cause was tried."

The attorney who prepared the papers, and both of the witnesses to the deed and the will, were sworn and testified. Their recollection of the circumstances is clear and distinct, and to the same effect.

The attorney first read the will to the plaintiff paragraph by paragraph, first in English and then translated it into the Polish language. At the end, he asked the plaintiff "now is this the way you want the will?" When she said "yes," the plaintiff and the 2 witnesses signed it. What then followed was testified by one of the witnesses, as follows:

"*Q.* Now witness, after the execution and signing of this will, will you tell just exactly what occurred thereafter?

"*A.* I believe there is in the will, there is a clause that home was to be assigned to the defendants, Mr. and Mrs. Stanley Migocki; and Mr. Zamierowski, the attorney, took the deed and said to Mrs. Dudkiewicz 'now in order to save future misunderstandings or any argument or any possible future probation, here is the deed to be assigned to your son-in-law and daughter.'

"*Q.* Did he explain the deed to her at that time?

"*A.* Yes, he did, and he explained it very carefully, with the understanding that Mrs. Dudkiewicz will have a life tenancy, life lease of the home as long as she lived, with the understanding that the son-in-law and daughter are to maintain repairs and keep care of Mrs. Dudkiewicz.

"*Q.* And that maintenance and care was to be for the rest of her life, was it?

"*A.* Yes, sir.

"*Q.* And whether or not Mr. Zamierowski at that time asked her whether that is what she wanted?

"*A.* Yes, he asked her.

"*Q.* And what was her answer to that question?

"*A.* She fully understood it.

"*Q.* And what occurred thereafter?

"*A.* After then he said 'here is the deed, you will sign on this line;' then he turned around to Mr. Derezinski, senior, and to myself, who were acting as witnesses, to which we have subscribed our signatures to the foregoing instrument. * * *

"*Q*. He told her that and told her in order to save probate and save any arguments that she should sign the deed, is that right? * * *

. "*Q*. And what did Mrs. Dudkiewicz say to this proposition that in order to save probate and argument, what did she say, what were her words?

"*A*. She said 'that is very well. It was translated correctly into Polish and Polish into English, I am fully satisfied.'

"*Q*. And did she say anything more than that?

"*A*. And she says 'Now I don't have to worry.'"

The other witness to the instruments testified:

"*Q*. Then what happened after that, after the will was signed? * * *

"*A*. After this Mr. Zamierowski said 'we make the deed' and she said 'that is the same thing we are going to sign,' because in the future there would be no arguments or anything.

"*Q*. And did he explain it?

"*A*. He explained what it means to Mrs. Dudkiewicz and asked her whether she was satisfied and she said yes.

"*Q*. Then what happened?

"*A*. Then we signed it. * * *

"*Q*. You say it was explained. What did he say about it?

"*A*. Mr. Zamierowski explained that she signed now in order so in the future if any death afterwards occurred they would have no trouble with the deed. * * *

"*Q*. And that is what Mr. Zamierowski told her?

"*A*. Yes."

Plaintiff's attorney, Sigmund S. Zamierowski, an experienced lawyer, was equally definite in his recollection of the circumstances. He testified:

"I explained to her what could be done, because she wanted me to explain to her just how the Migockis could be compensated for her care.

"I told her one way was to make a contract; I have done it on other occasions; and I explained to her of handling it on a support contract, and as part of the contract the party who was receiving support agrees to make an irrevocable will providing for reimbursement for such care. Well that was a little complicated for her, and she wanted to know if there was some other way to do it. Then I explained to her how it could be done with a deed to take care of the real estate, which was the main asset, and then we sort of figured out how much she wanted to give to the children; it amounted to somewhere between $800 and $900, and she at that time had $2,000, and I figured and told her that that was enough to take care of her illness and her funeral expenses and to make bequests to the children. So after talking, I had to be very patient with her, she was a sick woman, so I finally got all the details from her just exactly as she wanted them; I told her I would make the papers, come back some evening to have her execute them.    *    *    *

"I returned to the plaintiff's home a couple days after I had drafted the two instruments.    *    *    *    I arrived at plaintiff's house about 9 o'clock. Mr. and Mrs. Migocki, Chester Derezinski senior and junior were there, and Mrs. Dudkiewicz. I told Mrs. Dudkiewicz I had the papers ready, and told the Migockis to go into another room. After they were gone I pulled out the will and read it paragraph after paragraph, first in English, then in Polish. Mrs. Dudkiewicz asked Mr. Derezinski a question. Finally, in the usual way, I asked her if she understood everything and she said she did. I said 'all right, are you ready to sign the will?' She said she was, so she signed in the presence of the two gentlemen, Derezinskis.

"*Q.* After the execution and signing of the will what took place?

"*A.* Then I took the deed out and again I—that deed I didn't read word for word because in my

judgment I thought the formal legal language there would be somewhat meaningless to a layman— * * *

"*A.* * * * But I did explain the contents, its meaning to Mrs. Dudkiewicz; explained fully the reservation of a life estate, and explained also the effect of a deed, that it was a transfer and conveyance of property from her to her son-in-law and daughter, but it all means that for the rest of her life she would have control of the property.

"*Q.* Did you request of her at that time if that is what she wanted?

"*A.* Oh, yes. That was definitely what she wanted, because that is what she told me a couple nights before to do, so all this was done in accordance with Mrs. Dudkiewicz's instructions. The Migockis didn't know anything about it, didn't talk to them about it. * * *

"*A.* Then I asked Mrs. Dudkiewicz if that was in accordance with the way she wanted it and she said it was; then I said 'let us sign it up.' Mrs. Dudkiewicz signed, Mr. Derezinski senior and junior signed, then I acted as notary."

To some extent, this is corroborated by the plaintiff. She testified that she signed her name twice, but did not say whether it was on the same paper. As is usual, the deed and the will each contain but one signature of the plaintiff. She also testified, when asked whether one of the witnesses "read the papers" to her, as follows:

"*A.* I tell you Mr. Derezinski don't read nothing, just Mr. Zamierowski read himself, Polish, first Polish, then English, he told me how long I live the house is mine, and after death that house is, and if you pay me rent, that was the way, and he say then when I die the house belong to them and I should take the rent for them and do everything what belongs to the house, you know, the repairs; I said well Mr. Zamierowski, yes, like you say it, and then he say so,

then he finished he said 'I go to make it so, so there will be no trouble; (witness lapses into Polish).

"*Q.* Just talk English, not Polish.

"*A.* Because I can't say good English.

"*Q.* So it was explained to you that for your life you could live there?

"*A.* Yes."

Plaintiff's bill of complaint alleges:

"6. That this plaintiff is unable to read or write and was compelled to depend upon said defendants for an explanation of the contents of said documents. That said defendants fraudulently, wilfully, intentionally misled this plaintiff into believing that she had signed only her last will and testament.

"7. That plaintiff has lately learned that said defendants have wilfully, fraudulently deceived her and that they had her sign a last will and testament, and a deed to the premises described herein, granting to defendants the fee simple title to said premises, subject to a life estate to her. That this plaintiff did not know that she was signing a deed to said premises and never intended to part with her present ownership of said property.

"8. That said defendants wilfully misled and deceived plaintiff and persuaded her to sign said deed, knowing well that this plaintiff was unable to read, and this plaintiff relying upon the statements of said defendants that all she was signing was a last will and testament, did sign said documents and now has learned that she signed both a last will and testament and a deed."

The proofs not only fail to support plaintiff's allegations but, on the contrary, plainly show that the defendants had nothing to do with the entire transaction. Nor can we conclude that plaintiff's attorney failed to correctly interpret her wishes. There was no mistake of fact or of law, nor is there any evidence that the plaintiff was deceived or misled by the defendants, or by her attorney.

The trial court, in his opinion, first said:

"The deed contained no reservation of a life estate, nor was there any clause inserted which bound the defendants to support the plaintiff."

Later, the court's attention was called to the provision in the deed (defendant's exhibit 1):

"Saving and reserving unto grantor an estate for and during the term of her natural life."

Thereupon the court, after hearing a motion to amend his findings of fact, struck out from his opinion all reference to a reservation of a life estate, and inserted:

"The deed contained no clause which bound the defendants to support the plaintiff."

We find no occasion to consider or discuss the matter of the plaintiff's right to support and maintenance. The defendants have been paying the taxes, upkeep and repairs, as well as caring for the plaintiff and contributing toward her support. She does not seek cancellation on the ground that the defendants have not fulfilled an agreement to take care of her. Her bill of complaint makes no allegation of failure to support, or breach of any contract on the part of the defendants, nor is there any such reference in the proofs. We find no impelling reason why equity should cancel the deed in question. Plaintiff, at the hearing, still was willing that Florence should have the home in question at the time of the plaintiff's death; plaintiff's testimony indicates only that she did not want to be dispossessed of the property during her lifetime. Her right to possession and use is preserved by the reservation in the deed.

Reversed for entry of a decree dismissing the bill of complaint. Under the circumstances, no costs will be allowed.

SHARPE, C. J., and BUSHNELL, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.